**WHOLE COURT**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 10, 2017**

# In the Court of Appeals of Georgia

A16A1724. JOHNSON v. ALL AMERICAN QUALITY FOODS, INC.    DO-066

DOYLE, Chief Judge.

This case arises from the trial court's order granting summary judgment to a Food Depot grocery store in a slip-and-fall case filed by a shopper, Balinda Johnson, against Food Depot's parent company, All American Quality Foods, Inc. ("All American"). Johnson appeals, arguing that the trial court erred by granting summary judgment to All American. For the reasons that follow, we reverse.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review a grant or denial

of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant."[1]

So viewed, the record shows that Johnson was shopping in the Food Depot when she slipped in a puddle of liquid from packaged meat. A surveillance camera recorded a view of the area where Johnson fell, and it showed that seven minutes and thirty seconds prior to the fall, Johnson, her friend Lorene Evans, and their children traversed the area of Johnson's fall. Additionally, immediately prior to her fall, Johnson walked past the area, browsed either sides of the aisle for less than one minute, and then walked back the way she had just come, at which point she slipped and fell on her side.

According to the inspection log sheet, an employee named Angelo completed an inspection of the aisle where Johnson fell at 12:01 p.m., approximately 38 minutes prior to the incident. After Johnson's fall, the manager on duty, Chris Kempton, completed an incident report and discovered a trail of "spots of blood and meat products" in the aisle.

---

[1] (Citations and punctuation omitted.) *Samuels v. CBOCS, Inc.*, 319 Ga. App. 421, 422 (742 SE2d 141) (2012), quoting *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

2

All American moved for summary judgment, contending that it had no actual knowledge of the hazard, it had no constructive knowledge of the hazard and had a reasonable inspection procedure, and Johnson had superior knowledge based on traversing the area at least four times prior to the fall. Johnson responded, arguing that there remained genuine issues of material fact as to when the hazard was created and whether the inspection procedure was reasonable.

After a hearing, the trial court issued an order granting All American's motion for summary judgment, finding that there was no dispute of material fact as to All American's lack of constructive knowledge of the spill. Moreover, the trial court found that the inspection was reasonable as a matter of law.

In her sole enumeration of error, Johnson contends that the trial court erred by concluding as a matter of law that All American had established and carried out a reasonable inspection on the day of the accident. Thus, Johnson contends that a fact-finder could infer that All American had constructive notice of the hazard, and therefore, the trial court erred by granting its summary judgment motion. We agree.

As an initial matter, we note that Johnson traversed the area of her fall twice before slipping in the substance during her third crossing. This, however, does not

3

support a finding on summary judgment that Johnson knew or should have known about the spill as a matter of law.[2] That said,

> [All American] is liable for injuries caused by its failure to exercise ordinary care in keeping the premises and approaches safe. Thus, [All American] was required to exercise ordinary care to protect the invitee from unreasonable risks of harm of which the owner/occupier has superior knowledge. In a premises liability action, the plaintiff must plead and prove that: (1) the defendant had actual or constructive knowledge of the hazard; and (2) the plaintiff, despite exercising ordinary care for his or her own personal safety, lacked knowledge of the hazard due to the defendant's actions or to conditions under the defendant's control. Thus, to carry its initial burden and to survive a motion for summary judgment, a plaintiff must provide evidence that, when construed in his or her favor, would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard.[3]

---

[2] See *Food Lion v. Walker*, 290 Ga. App. 574, 577-578 (3) (660 SE2d 426) (2008); *McCoy v. Winn Dixie Stores*, 238 Ga. App. 543, 544 (519 SE2d 689) (1999) (holding that a question of fact exists as to whether plaintiff should have seen a puddle — a non-static hazard — prior to a fall). See also *Wiley v. Liberty Southern, Inc.*, 243 Ga. App. 110, 111-112 (532 SE2d 456) (2000) ("At its root, the issue . . . is whether taking into account all the circumstances existing at the time and place of [the plaintiff's] fall, [the plaintiff] exercised the prudence the ordinarily careful person would use in a like situation."), quoting *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997).

[3] (Citation and punctuation omitted.) *Samuels*, 319 Ga. App. at 423, quoting *American Multi-Cinema v. Brown*, 285 Ga. 442, 444 (2) (679 SE2d 25) (2009);

We agree with the trial court, and Johnson does not contend, that All American did not have actual knowledge of the hazard. Thus,

> [t]o establish constructive knowledge, [Johnson] must show that (1) a store employee was in the immediate area of the hazard and could have easily seen the substance or (2) the foreign substance remained long enough that ordinary diligence by the store employees should have discovered it. Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure. In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident. In addition, to withstand a motion for summary judgment, the plaintiff need not show how long the hazard had been present unless the owner has demonstrated its inspection procedures.[4]

Here, there is evidence that All American had an inspection procedure that called for inspections every hour, which allegedly occurred approximately 38 minutes prior to Johnson's fall. And although a time-stamped list of inspections supposedly performed that day was appended to Kempton's affidavit, the record shows that Kempton himself did not perform the inspections and thus could not swear that they were

_____

*Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997).

[4] (Citations and punctuation omitted.) *Walker*, 290 Ga. App. at 576 (1).

performed as noted on the printout.[5] But pretermitting whether the printout and Kempton's affidavit were sufficient to support the grant of summary judgment, this Court has found that questions of fact exist based on reasonableness of an inspection procedures even if the inspection occurred as little as 15 minutes to 20 minutes prior to a fall.[6] "The nature of a supermarket's . . . business creates conditions which cause slip and falls to occur with some frequency. Under those circumstances, we have held that premises owners have a duty to inspect with greater frequency."[7] Thus, in this case, the trial court erred by finding as a matter of law that All American's hourly inspection procedure shielded it from liability, and a jury question exists as to

---

[5] See *Davis v. Bruno's Supermarkets*, 263 Ga. App. 147, 149-150 (1) (587 SE2d 279) (2003).

[6] See *Burnett v. Ingles Mkts*, 236 Ga. App. 865, 867-868 (514 SE2d 65) (1999); *Jones v. Krystal Co.*, 231 Ga. App. 102, 103-104 (b) (498 SE2d 565) (1998). See also *Davis*, 263 Ga. App. at 150 (2) (holding that "an inspection may be required more frequently than every 30 minutes").

[7] (Punctuation omitted.) *Walker*, 290 Ga. App. at 576 (1).

whether All American's procedure was reasonable.[8] Accordingly, we reverse the trial court's grant of summary judgment to All American.

*Judgment reversed. Barnes, P. J., McFadden, P. J., Ray, and Rickman, JJ., concur. Miller, P. J., concurs fully and specially. Andrews, McMillian, and Self., JJ., dissent.*

---

[8] See id. at 576-577 (1).

A16A1724. JOHNSON v. ALL AMERICAN QUALITY FOODS.


MILLER, Presiding Judge, concurring fully and specially.

I agree with the majority that the facts in this case create a jury question as to whether All American Quality Foods's inspection procedures were unreasonable such that the supermarket had constructive knowledge of the alleged hazard that caused Ms. Johnson to fall. I write separately to emphasize that the fact-intensive nature of slip-and-fall cases will typically preclude summary judgment and require a jury to consider the merits. This does not mean, however, that this author is indicating that a plaintiff who merely avoids summary judgment is entitled to recover before the jury.

To survive summary judgment in a slip-and-fall case, the plaintiff must show that the supermarket had actual or constructive knowledge of the hazard, and constructive knowledge can be inferred from a lack of reasonable inspection procedures. *Ingles Markets. Inc. v. Martin*, 236 Ga. App. 810, 811 (513 SE2d 536) (1999). Whether an inspection procedure is "reasonable" depends on the facts and circumstances of the case. *Food Lion v. Walker*, 290 Ga. App. 574, 576 (1) (660 SE2d 426) (2008). This Court has said that more frequent inspections may be necessary in a supermarket setting, but we have never established a bright-line rule for what is a reasonable interval. Cf. id. (holding that the nature of the supermarket business requires more frequent inspections, but expressing no opinion on what the frequency should be). Given the fact-intensive nature of these claims, we should not create a bright-line rule.

> [S]ummary adjudication as to constructive knowledge arising from the duty to inspect is not authorized absent plain, palpable and undisputable proof that customary inspection procedures or cleaning practices were in place, were actually followed and were adequate to guard against known or foreseeable dangers at the time of the patron's alleged injuries.

(Citations and punctuation omitted.) *Burnett v. Ingles Markets*, 236 Ga. App. 865, 867 (514 SE2d 65) (1999). "The evidence in the case sub judice does not satisfy these criteria." Id.

Certainly there are slip-and-fall cases that are appropriate for summary judgment. See, e.g., *Deloach v. Food Lion, Inc.*, 228 Ga. App. 393, (491 SE2d 845) (1997) (summary judgment is proper where the plaintiff has failed to come forward with evidence to create an issue of fact that the supermarket had constructive knowledge of the hazard). See also *Robinson v. Kroger Co.*, 268 Ga. 735, 737 (1) (493 SE2d 403) (1997) (recognizing that summary judgment may be appropriate where the plaintiff could not establish the defendant's actual or constructive knowledge of the hazard). Supermarket slip-and-fall cases turn on the facts, and any determination of reasonableness of a supermarket's inspection procedures must depend on the particular facts of the case. The particular facts of this case do not warrant adjudication at the summary judgment stage of the litigation.

A16A1724.  JOHNSON v. ALL AMERICAN QUALITY FOODS,

INC.

ANDREWS, Judge, dissenting.

I dissent because I believe the trial court correctly found as a matter of law that the appellee carried out a reasonable inspection procedure and had neither actual nor constructive knowledge of the hazard.

1.  To demonstrate its lack of constructive knowledge of the hazard in this case, the appellee relied  upon  a report generated by an electronic inspection monitoring system the store utilized.  The appellant contends the report was inadmissible hearsay on the ground the appellee failed to properly authenticate it as a business record.

Under OCGA § 24-8-803 (6), a document shall not be excluded as hearsay, where it is

> a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, if (A) made at or near the time of the described acts, events, conditions, opinions, or diagnoses; (B) made by, or from information transmitted by, a person with personal knowledge and a business duty to report; (C) kept in the course of a regularly conducted business activity; and (D) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with paragraph (11) or (12) of Code Section 24-9-902 or by any other statute permitting certification.

In this case, the appellee submitted the affidavit of the co-manager of the grocery store who personally responded to the slip and fall incident. He explained that it was the store's policy to conduct formal inspections of the premises every hour using the Gleason ESP monitoring system, which required the inspecting employee to walk throughout the store and, at designated inspection sites, to hold a handheld device up to sensors that recorded the inspection data. The co-manager identified the system's computer report attached to the affidavit as a "true and accurate copy of the inspection report for the date in question." The computer-generated inspection report,

2

which reflects the date of the incident and was printed the day after the incident, indicates the time of each inspection stop during each hourly inspection, the identity of the employee, the number and location of the sensors, and the condition of the inspected areas.

The obvious purpose of the monitoring system was to contemporaneously document compliance with the store's inspection procedure. Nothing about the computer report suggests any lack of trustworthiness, and the co-manager's affidavit sufficiently authenticated the inspection report. See, e.g., *Loyal v. State*, 300 Ga. App. 65 (684 SE2d 124) (2009) (warehouse electronic security log); *Hamilton v. State*, 297 Ga. App. 47, 48 (1) (676 SE2d 773) (2009) (motel electronic key card interrogation log).

2. "[S]ummary adjudication as to constructive knowledge arising from the duty to inspect is not authorized absent plain, palpable and undisputable proof that customary inspection procedures or cleaning practices were in place, were actually followed and were adequate to guard against known or foreseeable dangers at the time of the patron's alleged injuries. [Cit.]" *Burnett v. Ingles Markets*, 236 Ga. App. 865, 867 (514 SE2d 65) (1999).

3

In the instant case, the affidavit of the store's co-manager indicated that part of its inspection procedure was requiring employees to be on the lookout for hazards as they went about their jobs during the day. The affidavit and the inspection report also established the store had a regular procedure of formally inspecting the store every hour, and the procedure was followed on the day of the incident. In fact, the inspection report reflects that during the 13-hour period running from 7:55 a.m. to 9:08 p.m. on the day of the incident, a total of 9 hazard clean-ups were recorded, attesting to the effectiveness of the inspection procedure. That averages out to a hazard occurring approximately every 1.4 hours, compared to the appellee's inspection schedule of every hour.

The appellee further showed the following: (1) the area where the appellant fell was inspected approximately 37 minutes before the fall; (2) the substance on the floor appeared to be meat product or blood; (3) the store's surveillance video showed the appellant's friend traversing the area approximately six minutes before the fall occurred, with packages of meat in her shopping cart; (4) the video also showed several other patrons, including the appellant, traversing the area safely during the six minutes preceding the fall; (5) no store employees were in the immediate area of the

hazard; and (6) the store had no knowledge of any leaks from its red meat packaging prior to this incident.

> Once a defendant demonstrates a lack of actionable constructive knowledge by compliance with reasonable inspection procedures, the burden shifts back to the plaintiff to show how long the foreign substance had been allowed to remain on the floor. The plaintiff must show that the substance was on the floor for a length of time sufficient for knowledge of it to be imputed to the defendant.

(Citations and punctuation omitted.) *Hopkins v. Kmart Corp.*, 232 Ga. App. 515, 518 (2) (502 SE2d 476) (1998). In the instant case, the appellee presented evidence showing it carried out a reasonable and effective inspection procedure, but in turn the appellant came forward with no competent evidence showing anything else that would impute constructive knowledge of the hazard to the appellee.

This Court has occasionally found jury issues on the reasonableness of inspection procedures where the inspections occurred at even shorter intervals than in this case, but in those cases the store proprietor had some notice of the risk of a particular hazard. See *Food Lion, LLC v. Walker,* 290 Ga. App. 574, 576 (1) (660 SE2d 426) (2008). In that regard, the appellant claimed to have overheard a store employee named "Bob," but who otherwise was unidentified, remarking that store

personnel had not been packaging the meat correctly. But that utterance would not qualify as an admission under OCGA § 24-8-801, and constituted inadmissible hearsay. The record is devoid of anything else that would have put the appellant on notice of the need for more frequent inspections.

The evidence showed that neither party here had actual knowledge of the hazard. And as the appellee carried out a reasonable inspection procedure on the day of the incident and the appellant failed to show anything else that could impute knowledge of the hazard to the appellee, the majority opinion is in error in reversing the trial court's grant of summary judgment for the appellee.

I am authorized to state that Judge McMillian and Judge Self join in this dissent.